[No. 1889.]

## NATIONAL FIRE INSURANCE COMPANY ET AL. v. THE DENVER CONSOLIDATED ELECTRIC COMPANY ET AL.

1. NEGLIGENCE—LIABILITY OF ELECTRIC LIGHT COMPANY.

Where the owner of a building wired the building for electric lights or employed contractors to wire it, an electric light company which had nothing to do with the wiring of the building but which connected its wires with the wires of the building and supplied the building with electricity for lights is not liable for any damage caused by the defective and negligent wiring of the building.

2. SAME—NOTICE.

Where the owner of a building employed contractors to wire it for electric lights, an electric light company which afterwards supplied electricity to light the building was not chargeable with notice of the negligence with which the wiring was done or of defective material used, because a superintendent of construction for the electric light company casually saw the work as it was being done, so as to make the electric light company liable for damage from fire caused by the negligent manner in which the building was wired.

3. SAME.

Where the owner of a building employed independent contractors to wire the building and afterwards contracted with an electric light company to supply the building with electricity, the electric light company is not liable for damage from fire caused by the negligent manner in which the building was wired, because it delivered the current to the building without warning the owner of the danger attending its use, where the wiring is defective or negligently constructed.

4. NEGLIGENCE—LIABILITY OF ELECTRIC LIGHT COMPANY.

Where the owner of a building employed independent contractors to wire the building for electric lights and afterwards contracted with an electric light company to supply the building with light, and one of its chandeliers having fallen the agent of the owner telephoned the electric light company to send a man to fix it, and when he came he found that a fuse had been burned out and told the agent that it could not well be fixed that night, but that he would come the next morning, and upon being asked if there was any danger answered no, and about an hour later a fire occurred which destroyed the building, but whether or not it occurred from the fallen chandelier did not appear from the evidence, the electric light company was not bound by the answer of the employé sent, as to the safety

of the building, and was not on account of such answer liable for damage caused by the fire.

*Appeal from the District Court of Arapahoe County.*

Mr. R. W. Barger, Mr. Platt Rogers and Mr. Percy Wilson, for appellants.

Mr. I. N. Stevens and Mr. F. W. Lienau, for appellees.

Bissell, P. J.

This is a case without a prototype. We have been cited to none at all similar, nor to any precedent which in our judgment even remotely tends to uphold the cause of action stated. This neither demonstrates nor tends to demonstrate that the plaintiffs have suffered no wrong, nor that they are without a remedy for that stated, but it leads the court to be somewhat critical in the examination of the positions which the appellants have assumed.

The suit was begun by some ten or a dozen insurance companies against The Denver Consolidated Electric Company to recover the amount which they had paid to the depot company for a loss. In March, 1894, fire broke out in the union depot and pretty nearly destroyed one end of the building, and the insurance companies were compelled to pay some $60,000 for the loss. After paying it they brought this suit against the electric company for reimbursement. Disregarding any discussion of the query whether the insurance companies could maintain such a suit under any circumstances, even though the electric company had been responsible for the fire, we shall put the affirmance on the precise ground that they failed to make any proof, or offer any evidence which tended, save most remotely, to establish the cause of the fire. The companies likewise failed to prove or offer to prove or submit evidence which tended to prove that the electric company was in anywise responsible for the loss. In other words, they wholly failed to produce any proof which

would lay the responsibility for the fire on the electric company. The complaint stated several causes of action, but we shall dismiss the first two because no evidence was offered about them. These related to the careless and negligent manner of the wiring, the unsafe and dangerous character of the wire used, and charged that the fire was caused by this negligence. When it came to proof, however, there was nothing tending to show that the electric company had anything to do with the wiring, or with the inspection of the wires, or that it made any contract or entered into any engagement to keep the wires in good repair and in a safe and proper condition. Evidence was offered to the effect that the building was wired in 1888 by the firm of Baxter & Spicer of Philadelphia under an employment by The Union Depot Company, and that the electric light company was not a party to the agreement and did not execute it. What was done was done by the depot company at their own expense and on their own responsibility. The electric light company, under a contract with the depot company, connected their system with the wiring and delivered a current for use. This was the extent of the connection between the two companies, and it was simply a delivery of a current for lighting purposes by one, and the payment of an agreed price therefor by the other. Whatever therefore may have been the character of the wiring or the nature of the work, it was a matter with which the electric light company was not chargeable. If it was negligently done, the negligence was the negligence of the depot company which put it in, or of the firm which that company hired, whose negligence would of course be the negligence of the depot company. There was a total absence of evidence which sustained, or which tended to sustain any knowledge on the part of the electric light company of the character of this wiring. The only evidence which they presented on this subject was that of Stern, who testified that in 1888, when this wiring was put in by Baxter & Spicer, he was the superintendent of construction for one or more of the companies which by consolidation became The Denver

Consolidated Electric Light Company; that casually from time to time he saw this work as it was done by Baxter & Spicer, saw the nature of the wiring and the method of its attachment. He was not very precise or positive in regard to its character. In other words, at the time the wiring was put in he does not appear to have been particularly impressed with any negligence on the part of Baxter & Spicer, nor with the defective character of the wiring, or the unskillful method of its attachment; at all events, if he was so impressed he said nothing about it. There was no evidence that he stated what he saw to any of the officers or directors of the electric light company. So far as we can see he was an employé occupying perhaps a controlling position with reference to other workmen in the service of the electric light company, being the superintendent of construction, but he was not an officer of that company, nor was he a director in the corporation. He never examined the building to determine whether the wiring was adequate, nor whether it was properly put in. His observation was simply casually made as he went about the city looking after the construction of the plant of the electric light company, and the connections which were to be made with the various buildings in the process of construction.

. There was also a good deal of evidence offered, and some offered which was refused, tending to show that the wiring was, at the time of the trial at least, and possibly at the date when it was put in, inadequate and unsafe. It was what is known as underwriter's wire, which the experts testified was not the best kind of wire to be used about a building of that sort, though it is entirely safe if perfectly insulated. There was evidence which tended to show that the wires were run through holes in the rafters and then along laths or slats, and had more or less connection with the woodwork. There was testimony which tended to show that after the wiring had been put in, the wires had been unduly loaded with lights, which as the experts say tends to concentrate the heat to the largest wire, and has a

tendency to unduly increase the heat at given points, and if at those points it strikes the wood, may char and ultimately cause a fire. We have not attempted to state all the evidence in this direction, but this is substantially the purport and tendency of the proof which was offered. There is another basis on which the appellants attempt to rest their cause of action : the circumstances of the fire.

There was proof that in the evening along about eleven, a chandelier which was unlighted in the ladies' waiting room, fell. The depot master immediately telephoned the electric light company to send a man down. For what purpose, and what sort of a person he wanted sent the evidence does not disclose. There was nothing to show that he called for an electrical expert or a man who was competent to determine whether the condition was a dangerous one. A man reported, presumably and ostensibly from the electric light company. He examined the chandelier and went up into the upper story and found the fuse had burned out which furnished the light in that section of the depot. He apparently made no extensive examination of the condition of the wiring. He was not requested by the depot master to do otherwise than to ascertain the cause for the fall of the chandelier and the trouble with the lights, and to see that in this respect everything was rendered safe. When he came downstairs the depot master inquired of him, whether there was any danger and he replied no, and stated that it would be difficult to make the repair that night but he would come down in the morning, repair the wire and fix up the lights. With this statement the depot master was satisfied, the employé went away, and within less than an hour thereafter a fire broke out. We do not know, nor are we advised by the record, whether this was caused by the electric current. We do know that the insulated covering on the wire in one of the rooms was being consumed to the observation of one of the employés of the railroad company, and we do know from the expert's testimony that this indicated that some fuse had failed to burn out and that there was an undue

current in that locality. Otherwise than by a sort of guess, there is nothing to show that the fire came from the electric current, although for the purposes of this decision we are quite willing to assume that it did.

There are many reasons why this judgment in favor of the electric light company must be sustained. There was no competent evidence which established any responsibility on the part of the electric light company for the original wiring or for its inspection. The wiring was done by a concern with which the electric light company had no connection. The depot company hired them, paid for the work, and they and they only were responsible to the depot people for the character of what was done. Manifestly under these circumstances, the electric light company cannot be holden for any defect either in the character of the material used, or in the negligent and unskillful performance of the work. To state the evidence and to state the situation is to dispose of this proposition. The only theory on which it is sought to hold the electric light company is that they had knowledge of the insufficient character of the wire, and the defective construction, and being advised of the dangerous character of the current which they were to supply, they were bound to advise the depot company about it, and had no right to make the connection and turn the current on without advising the depot company of the danger attending the use of electricity for lighting purposes, and especially about the danger of turning on the current where the wiring was of the sort and the work of the description which the proof disclosed. We do not think either proposition can be maintained, nor that there is anything in the case which justifies the application if defensible. In the first place there is nothing which demonstrates that the electric light company had any knowledge either of the defective character of the wiring or of the negligent or unskillful construction. Stern's knowledge is not the knowledge of the electric light company, nor can any information which he acquired, in view of the way in which he acquired it, be imputed to that cor-

poration.  He was not the general agent of the corporation. He was an employé charged with certain duties, and though those duties were of a supervisory nature, they in no sense made him the representative of the corporation so that it would be charged with the knowledge which he casually acquired in going about the city.  Since there was no connection between the union depot company and the electric light company, and because the work was being done by an outside firm on employment by the depot corporation, we think it quite clear that the knowledge acquired by Stern was not knowledge brought home to the corporation.  We do not need to discuss or consider what the rule is in those cases where knowledge has once been brought home to a corporation, or to an agent of a corporation, and the event out of which their responsibility is supposed to grow, occurs long subsequent to the acquisition of the knowledge.  This is a matter which admits of discussion, but we are not required to express an opinion about it.  It is always true that a principal is not bound by knowledge acquired by an agent unless that knowledge is present to the agent's mind at the time of the transaction out of which the responsibility grows.  We need only cite one authority to it.  *Campbell v. First Nat. Bank*, 22 Colo. 177.  This case is not directly in point, nor has our attention been called to one which seems to be entirely applicable.  If Stern ever acquired any knowledge it was entirely unofficial, and it was not at the time of a transaction between the union depot company and his employers. So far as the evidence discloses he never communicated the information to any of the officers or directors of the corporation.  The fire happened years after the wiring was done and years after the connection was made.  It is not certain that Stern was in the employ of the electric light company when the fire occurred.  To attempt to charge the electric light company with responsibility because of this casual knowledge, which was not communicated, and of which they were not advised when they made the connection and delivered the light, and of which they never had information so far as the

proof shows, would carry the doctrine of the responsibility of the principal because of the knowledge of his agent to a limit, which is not recognized by any of the cases, and which is not justified by any legal principle. We do not assent to the position which the appellants take, that the electric light company had no business to deliver the current without informing the depot company of the danger attending its use, and particularly of the danger attending its use where the wiring was defective or its construction unskillful and negligent. Where parties undertake to wire their own property and then apply to a light company to deliver a current to light the building, they must be assumed to take all risks resulting from the character of the wire which is put in the building, and the method of construction which is adopted in putting it in. We do not believe that the principle contained in some cases to which our attention has been called, notably *Lannen v. The Albany Gas-light Co.*, 44 N. Y. 459; *Farrant v. Barnes*, 2 Com. Bench, 553 (103 Eng. Com. Law); *Thomas v. Winchester*, 6 N. Y. 396; *Wellington v. Downer Kerosene Oil Co.*, 104 Mass. 64, is at all applicable. In those cases it will be observed the injury was done to an individual because of the undisclosed dangerous character of the material sold, or the negligent conduct of an agent. They were not cases in which injury was done to property. Besides the dangerous character of the article was not known, understood, or readily ascertainable by the individual to whom the stuff was furnished. This is of course true with reference to explosive oil, with reference to the nitric acid carboy, and with reference to the extract of belladonna. No such condition or circumstances attended the supply of the electric current. It is a matter of common knowledge, and in fact of universal knowledge, that an electric current is dangerous and must be discreetly and prudently handled in order to avoid danger either to life or to property. We are quite ready to concede that when an electric light company undertakes to supply a dangerous current to a dwelling house or to a building, they are bound to see that the wires

they put in and the connections they make, are properly insulated and protected so that no harm will come to the property. Where, however, they are only employed to deliver the current by connection with wiring already made by the individual who owns the property, it seems to us that their responsibility ends when the connection is properly made under proper conditions, and they deliver the current in a manner which will protect both life and property. We do not believe any such responsibility rests on the company as to require them to advise the persons who apply for the connection that they must see to it that the wiring is of a certain class or description; that it is insulated in a particular manner; that there is no connection between it and the woodwork, and failing in this that they will be liable for any damages which may happen because of the negligent or unskillful nature of the construction. When parties wire houses they are supposed to have done it intelligently and to have hired competent persons for the purpose, to whom alone they must look in case the work is improperly and unskillfully done.

There is still another reason why the appellants must fail. They did not show that the electric light company was responsible for the conduct of the man who was sent there to look after the property at the time the chandelier fell. There is no proof that the depot master had any right to either inquire of the employé, or rely on his answer, in settling the question of the presence or absence of danger. The chandelier fell and naturally put out some of the lights, and they telephoned for a man to come down to attend to the matter. This he did, and when he went up to the locality of the accident he discovered that the fuse had burned out, which put out the light and probably caused the destruction of the wire which permitted the chandelier to fall, though the latter proposition is not clear. When he came down he was inquired of by the depot master whether there was any danger, to which he responded no. There is nothing which demonstrates that he could bind the light company by this declaration. A work-

man sent to repair is not necessarily one who is competent to advise. It might be true the electric light company would be quite willing to be held responsible for the work done by the employé, or held responsible for his examination as to what ought to be done in an emergency of that description. This, however, in no manner establishes the fact, that the company would be willing to be held responsible, or ought to be held responsible for a statement that the general situation was such as to be free from danger. This would assume a knowledge on his part of the condition of the wiring all over the building, and would presume an examination of the general situation to enable him to answer that direct question, and so answer it that the depot company could rely on it, and in case of failure hold the electric light company responsible. We do not believe his agency or his relations to the company were sufficiently established to bind the company by his declarations.

Even though this position be not well taken, it is true on the evidence the condition was not such as to require that the current should be shut off when the employé went there. It is quite possible that his statement was absolutely true. It is likewise possible that there may have been elsewhere in the building defective material or negligent construction which resulted in the fire. It is equally possible, and the contrary presumption may not be indulged in under the evidence, that the fire did not break out because of the accident, or of anything resulting from it, but because of the condition which had theretofore existed, and which culminated when the connection with the chandelier broke. The testimony of the experts is to the point that where the insulation is defective and the wiring is attached to woodwork, with an excess current, it may char and break out in fire. This may be precisely what happened. There is nothing which tends to prove that the fire was caused by the breakage which the employé was sent to investigate and repair.

We think, however, the affirmance of the judgement can be very safely rested on the broad proposition, that the electric

light company had nothing to do with the furnishing of the wiring which was put into the building, or with its attachment to the structure, and if any injury happened, or a fire broke out because of defective wiring or negligent construction, it is a matter for which that corporation cannot be held responsible. The depot company hired an independent firm to put it in, and neither they nor anybody in privity with them can look to anybody except the contractors who did the work.

We can discover nothing in the proof which would warrant us to disturb the judgment, which will accordingly be affirmed.

*Affirmed.*